STATE of Missouri,
Plaintiff-Respondent,

v.

Joseph BALL, Defendant-Appellant.

No. 52175.

Missouri Court of Appeals,
Eastern District,
Division One.

July 21, 1987.

Alvin A. Wolff, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Donna Richards-Crosswhite, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Joseph Ball appeals from a judgment entered on a jury verdict finding him guilty of two counts of rape; § 566.030 RSMo 1978. Appellant was sentenced to five years imprisonment on both counts, the sentences to run consecutively. We affirm.

The sufficiency of the evidence is not challenged. Viewed in the light most favorable to the state, the record reveals the following facts.

Victim's mother testified at the trial, in July of 1986, that she first met appellant approximately seven years before. Victim's mother has three daughters: ages 15, 7, and the 13 year old victim.

On August 12, 1985, Angela Gones, a neighbor who lived downstairs from victim's mother in a two family flat, overheard victim and appellant in the midst of a heated argument. Victim ran into Ms. Gones' house, where Ms. Gones spoke with victim. Later that day, Ms. Gones contacted the child abuse hot line to report that appellant had allegedly engaged in sexual intercourse with victim.

The Division of Family Services then contacted the St. Louis Police Department. Sergeant Willie Smith, a detective assigned to the child abuse unit, contacted the victim's mother. The next day, Sergeant Smith interviewed the victim's mother, victim, Angie Gones, and appellant. The record indicates that the victim told Sergeant Smith that appellant had sexually abused her on at least four separate occasions: in May, 1984, between July 7 and July 15, 1985, July 31, 1985, and on August 8, 1985.

After the interviews were completed, Sergeant Smith advised appellant that he was under arrest. Appellant was released shortly thereafter pending warrant applications.

On September 5, 1985, Sergeant Smith obtained medical evidence to corroborate the victim's statements. Victim was examined at Cardinal Glennon Hospital by Dr.

James Monteleone. Dr. Monteleone found the victim's vagina and hymenal ring were markedly dilated and concluded that the victim had been chronically sexually abused. Subsequently, the police obtained warrants for the arrest of appellant.

At trial, the victim testified that while her mother was at work, appellant would come over to the mother's house and would engage in sexual intercourse with her. Appellant contributed financially to mother's family by paying rent and buying groceries, and the victim believed that her family would starve if she told anyone about appellant's sexual activities. Nevertheless, the victim told Ms. Gones, the neighbor, who then contacted the child abuse hot line. Victim testified as to the specific acts of sexual intercourse with appellant, and demonstrated the sexual acts by use of anatomically correct dolls.

Appellant testified that for the past four years he had been treated by Dr. Hawatmeh, a board certified urologist, for a urinary problem. Appellant further testified that the treatment, which occurred every three to four weeks, was extremely painful. However, appellant went on to explain that even after his treatment he continued to engage in sexual intercourse with victim's mother.

His physician, Dr. Hawatmeh, testified in a deposition taken on June 6, 1986, that it was his opinion based upon a reasonable degree of certainty that appellant's treatments "could cause impotency". Moreover, Dr. Hawatmeh stated that based upon appellant's medical history, he concluded that appellant was impotent.

However, Dr. Monteleone, the physician in charge of child abuse at Cardinal Glennon Hospital, testified that it was possible for a man to have sexual intercourse even if he does not have an erection. Further, Dr. Monteleone stated that it was also possible for a child to be penetrated by a non-erect penis.

At trial, appellant sought to introduce medical records showing nine different treatments performed on appellant to alleviate his urinary tract problems. The trial court admitted the records detailing 3 of the 9 medical procedures which were performed on June 28, July 19, and August 9, 1985. The records for the other 6 procedures were excluded by the trial court on the grounds of relevancy, as those treatments were performed prior to the alleged acts of sexual intercourse with victim. Appellant also offered records from Incarnate Word Hospital showing additional urinary tract procedures from December 11, 1983, through September 13, 1984, which were also excluded from evidence.

Appellant's sole point on appeal is that the trial court erred in excluding evidence that appellant had urinary tract procedures performed on specific dates because the records were relevant to disprove the crime of rape.

■ Respondent contends that appellant's offer of proof regarding the medical records was insufficient, and thus appellant's issue was not properly preserved. An offer of proof may be in narrative form so long as the offer is definite, is specific, is not mere conclusions of counsel, and sets out sufficient facts to demonstrate the admissibility of the evidence. *State v. Dixon*, 655 S.W.2d 547, 557 [16] (Mo.App.1983).

■ Appellant's offer of proof reads as follows:

MR. WOLFF: Okay. My offer of proof would be that during the years 1985, he was dilated on January 22nd, February 26th, March 19th, April 9th, April 30th, and during the time that he is alleged to have committed one of the [sic] rapes in May, was May 21st, 1985. And appellant testified that he did not want to look at a woman after—after having it [the dilation] ...

PROSECUTOR: He was charged with the crime of May of '84.

MR. WOLFF: Okay. I stand corrected. I'll get to July. He was dilated June 11, 1985, June 28, 1985, July 19, 1985 and August 9, 1985.

Respondent contends that the fact appellant would not want to look at a woman after his treatments is not specific and sufficient in detail to establish the admissibility of the evidence. We agree.

However, assuming arguendo that the issue was properly preserved, we find that appellant's treatment for urinary problems was irrelevant and immaterial in that the treatments did not tend to disprove any element of the crime of rape. Appellant relies on *State v. Gibson*, 636 S.W.2d 956 (Mo. banc 1982) in support of his contention that the medical records which were excluded by the trial court were relevant to show that appellant was impotent, and thus it was impossible for appellant to commit the crime of rape. *Gibson* is distinguishable from the case at bar.

In *Gibson*, appellant sought to introduce evidence that the complainant had had sexual relations with her boyfriend sometime within two or three hours of the alleged rape, but the trial court excluded the evidence. The appellant in *Gibson* argued that the evidence was relevant to motive: motive to have sex, motive to lie and motive to go to a hospital (fear of pregnancy). The *Gibson* court held:

> Upon consideration of the whole record, we find the trial court erred in refusing the proffered evidence because it was 'evidence of immediate surrounding circumstances' and because it was highly probative of the issue of consent and appellant's mental state. As appellant argues on appeal, it is true that rape cases generally turn upon whom a jury believes. Here evidence tending to corroborate appellant's testimony came from complainant's own mouth within two or three hours of the alleged rape.
>
> . . . .
>
> Because the proffered evidence was probative of the issue of consent, which is central both to the rape and the kidnapping, the judgments on both counts are reversed and the cause is remanded.

In the instant case, the proffered medical records are neither relevant nor are the records corroborative evidence relevant to appellant's ability to commit the crime of rape. The acts of sexual intercourse with victim allegedly occurred on July 7 through July 15, July 31, and August 8, 1985. The medical records which were excluded from evidence described appellant's treatments for urinary problems which occurred prior to the acts of sexual intercourse with victim. Accordingly, the trial court admitted evidence of the appellant's medical treatments on June 28, July 19, and August 9, 1985. The jury was aware that appellant did in fact have three painful treatments that occurred in very close temporal proximity to the alleged rapes. We find that the excluded evidence that appellant was treated on January 22, February 26, March 19, April 9, April 30, and June 11, 1985, was too remote in time from the acts of sexual intercourse with the victim, and therefore the exclusion of those medical records was proper.

We also note that appellant's conclusion that these records are dispositive of the issue that it was impossible for defendant to commit the crime of rape is incorrect. Appellant testified that even after his treatments he continued to engage in sexual intercourse with the victim's mother. Thus, whether appellant had treatments on January 22, February 26, March 19, April 9, and April 30, 1985, had no effect on his ability to have sexual intercourse with the victim. Furthermore, Dr. Monteleone testified that it was possible for a man to have sexual intercourse and penetrate a child by a non-erect penis. Thus, the evidence of these medical procedures that *could* cause impotency is irrelevant to the issue of whether appellant committed the crime of rape, because even if appellant was impotent, this condition would not preclude his ability to penetrate the victim's vagina and thus commit the offense of rape.

The judgment of the trial court is affirmed.

SATZ, P.J., and CRIST, J., concur.